RICHARD E. STAIR AND HAZEL M. STAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stair v. Commissioner
Docket No. 39674-87.
United States Tax Court
T.C. Memo 1989-302; 1989 Tax Ct. Memo LEXIS 301; 57 T.C.M. (CCH) 780; T.C.M. (RIA) 89302; June 21, 1989. Richard E. Stair, pro se. Timothy S. Sinnott, and Timothy A. Lohrstorfer, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioners' 1983 and 1984 Federal income tax in the amounts of $ 7,277 and $ 5,637, respectively. The issue we must decide is whether petitioner Richard E. Stair may deduct losses incurred in his automobile racing and repair activities. FINDINGS OF FACT Some of *302 the facts in this case have been stipulated and are so found. Petitioners were husband and wife during the years in issue and resided in Lafayette, Indiana when the petition was filed in this case. Petitioners deducted as business expenses losses from petitioner Richard E. Stair's automobile racing and automobile repair activities. Petitioner has been interested in automobile racing since he was in high school in the late 1950's. From 1960 to 1966 and 1969 to 1977 he worked as a part-time assistant mechanic with Bob Higman, a designer and builder of championship and midget race cars; petitioner worked full-time for Higman from 1967 to 1968. While working for Higman part-time, petitioner was employed full-time by Anheuser-Busch, Inc., and later by A. E. Staley Manufacturing Company. Petitioner began to learn how to drive a race car in 1977 and began to race his own car in that year. On May 24, 1980, petitioner set the International Hot Rod Association ("IHRA") national record for the fastest time in the one-eighth mile distance. After setting this record, petitioner secured three sponsors, K-Motion Racing, Griner Engineering, and B & B Head Service which provided petitioner *303 with discounts on auto parts and free labor for installing parts petitioner purchased. No cash was contributed by these sponsors, and petitioner never obtained a written sponsorship agreement from any company that would have contributed money for petitioner's operating expenses. In 1983 and 1984, petitioner was employed full-time as an automated control panel operator for A. E. Staley Manufacturing Company of Decatur, Illinois and drag raced on weekends from April to October on asphalt tracks. Petitioner maintained no contemporaneous records on the number of races he entered, potential prizes available, or actual amounts he won during those years. Moreover, petitioner did not have any plan or strategy to develop his skills to the level needed to carry on his racing activity for profit. Petitioner did not employ a professional mechanic to maintain the vehicle. Rather petitioner, a skilled mechanic, repaired and maintained his car assisted by family members and other racing enthusiasts who volunteered their time. Petitioner earned gross receipts from his racing in the amounts of $ 525 and $ 2,020 in 1983 and 1984, respectively. In 1985, petitioner took the "Frank Hawley Advanced *304 Course for Drag Racing." Through the course, petitioner learned that he knew less than he should have about safety, mental preparation and the concentration necessary to be a successful race car driver. Until taking the course, petitioner did not realize the total preparation and concentration needed to make a good driver. Moreover, on the videotape of petitioner's experience at the course, the course instructor stated that 75 percent of all participants attended for the thrill of experiencing acceleration from 0 to 200 mph in 6 seconds. The course appeared to be designed for amateurs. Petitioner's automobile repair activity during 1983 and 1984 consisted of repairing motor vehicles for third parties. Petitioner earned gross receipts from repairing vehicles for others in the amount of $ 1,000 and $ 600 in 1983 and 1984, respectively. Petitioner did not advertise and kept no records of the amount of time spent on repairing his own vehicle or the vehicles of third parties. Petitioner maintained no formal books and records of his automobile racing or repair activities and did not separate his automobile racing expenses from his automobile repair expenses. The gross receipts, expenses, *305 and resulting net losses of both petitioner's racing activity and automotive repair activity were commingled and reported on petitioners' 1983 and 1984 Schedule C, Profit or (Loss) from Business or Profession as follows: Item
1983
1984
Gross receipts
$  1,525 $  2,620 Car and truck expenses
14,875 12,128 Depreciation
-0- 5,663 Insurance
305 557 Laundry and cleaning
-0- 200 Travel and entertainment
4,412 3,698 Utilities
763 702 Entry fees
650 1,270 Tools
599 679 Parts
6,670 7,201 Net Loss
($ 26,749)
($ 29,478)
Petitioner realized net losses from his racing and repair activities from 1981 to 1985 as follows: Year
Net Loss
1981
$ 12,372
1982
16,257
1983
26,749
1984
29,478
1985
22,231
OPINION Respondent determined that petitioner engaged in his racing and car repair activities as hobbies and disallowed petitioner's losses except to the extent of petitioner's gains from the activities. Section 183. [1] Respondent concedes that petitioner has substantiated expenses incurred in pursuing his auto racing activity in 1983 and 1984 *306 in the amounts of $ 28,274 and $ 32,098, respectively. The issue we must decide is whether petitioner engaged in automobile racing and repair with an actual and honest profit objective. If so, he may deduct losses incurred in those activities as business expenses pursuant to section 162. If the petitioner's activities are not engaged in for profit, however, losses incurred from those activities may be deducted only to the extent of gross income earned from the activities. Section 183(b)(2). Petitioner has the burden of proving that respondent's determination in the statutory notice of deficiency is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Whether petitioner had an actual and honest profit objective in pursuing his automobile racing and repair activities is a question to be answered on the basis of all the facts and circumstances. Section 1.183-2(b), Income Tax Regs. Greater weight is to be given to objective facts rather than to the taxpayer's mere statement *307 of his intent. Section 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., lists some of the factors to be considered in determining whether an activity is engaged in for profit. They include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and, (9) elements of personal pleasure or recreation. In applying these factors to the facts of petitioner's case, we exercise judgment, not an arithmetical tally. After consideration of the evidence before us, we conclude that petitioner has failed to prove that he had a profit objective in 1983 and 1984. First we note that petitioner did not manage his automobile racing and repair activities as businesses designed to make a profit. While *308 petitioner saved receipts from his expenses, he kept no regular and separate books and records of his two activities and did not maintain a separate bank account for them. Petitioner's accounting system merely listed his expenses from racing and repair. Second, he did not describe any plan for achieving financial success; he seemed more desirous of racing for the excitement of it than for any profit it might offer. Petitioner's zeal cannot be doubted, and he obviously wanted to win his races, but his zeal was undisciplined in 1983 and 1984. On this point we rely heavily on petitioner's testimony that until he attended a racing course in 1985, he did not realize the need for mental discipline and "total preparation" to be a winner. Petitioner had dreams but no real objective to make a profit prior to his attendance at racing school in 1985. Moreover, the course he took in 1985 was designed for amateurs. Third, because of the lack of any concerted efforts to improve his performance and of any plan to develop his skills, petitioner could not properly assess the profitability of his activities. Petitioner offered no examples, prior to his attendance at racing school, of how he found *309 ways of cutting expenses or increasing profits from his activities. See Engdahl v. Commissioner,72 T.C. 659, 607 (1979). Other factors support our conclusion that petitioner did not engage in his activities for profit. Although business and pleasure are not mutually exclusive, petitioner's activity has recreational aspects that were dominant in his motives. We note that petitioner had consistently large losses from his racing activity which totaled $ 107,087 over a five-year period. On the basis of the entire record, we conclude that petitioner pursued his automobile racing and repair activities without the requisite profit objective. Consequently, we hold that petitioner's expenses from his automobile racing and repair activities are deductible only to the extent of his income from those activities. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated.↩